This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DAVID HOFFMAN and JANIE HOFFMAN,**

Protestants-Appellants/Cross-Appellees,

v.                                                                    **No. A-1-CA-36399**

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**

Respondent-Appellee/Cross-Appellant.

**APPEAL FROM ADMINISTRATIVE HEARINGS OFFICE**
**Dee Dee Hoxie, Hearing Officer**

Queener Law Firm, P.C.
Richard L. Queener
Clovis, NM

for Appellants

Hector H. Balderas, Attorney General
Marek Grabowski, Special Assistant Attorney General
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** David and Janie Hoffman (Taxpayers) appeal from the decision and order of the administrative hearing officer affirming the New Mexico Taxation and Revenue Department's (the Department) assessment of Taxpayers' personal income tax, penalty, and interest for tax periods from January 1, 2009 through December 31, 2015. Taxpayers challenge the hearing officer's determination that Taxpayers' grass-fed beef operation was not a for-profit business. In addition, the Department cross-appeals the hearing officer's decision to abate the Department's assessment of penalties. We affirm the decision and order of the hearing officer.

## BACKGROUND

**{2}**     Taxpayers purchased land in Quay County, New Mexico in 2006 in pursuit of their dream to own and operate a cattle farm. Taxpayers' farming operation turned a profit in 2007 and 2008. In 2009 Taxpayers decided to change the operation to try to raise grass-fed beef. The operation suffered through a drought from 2010 through 2012. Taxpayers then reported farm losses on their personal income tax returns in 2009, 2010, and 2012 through 2015. In 2016, pursuant to an audit, the Department determined that Taxpayers' application of the operation's losses as deductions was improper. The Department proceeded to assess additional personal income tax, penalty, and interest for tax years 2009, 2010, and 2012 - 2015[1] and found Taxpayers owed the Department $7,154.00 for tax, $1,293.52 for penalty, and $552.44 in interest for the years assessed. The Department denied Taxpayers the loss-based deduction based on its conclusion that Taxpayers' grass-fed beef business was not a for-profit activity under 26 U.S.C. § 183 (2018). Taxpayers formally protested the assessment by filing a timely letter with the Department.

**{3}**     At the formal hearing on March 16, 2017, Taxpayers were represented by Douglas Mote, an "[e]nrolled agent" under 31 C.F.R. § 10.4(a) (2018) (enrollment as an enrolled agent is granted to applicants eighteen years old and over who pass a written examination administered by the Internal Revenue Service or who possess a valid tax preparer identification number). Taxpayers argued their operation was a for-profit activity in accordance with the nine factors set forth in 26 C.F.R. § 1.183-2 (2018). Those nine factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. 26 C.F.R. 1.183-2(b). Mr. Mote and Taxpayers provided testimony as to these nine factors.

**{4}**     Mr. Mote testified that Taxpayers purchased the land for $170,000 in 2006 and its appraised estimated value was $312,600 in 2015, showing appreciation in land value. He also explained Taxpayers put substantial work into the land and into raising their cattle, causing the land and assets thereon to appreciate in value despite the severe drought. According to Mr. Mote, the appreciation in value of the land and assets, along with the personal time and effort expended by Taxpayers, demonstrates the operation is for-profit under the fourth and third factors of 26 CFR 1.183-2 because appreciation in land value and operation assets "more than offsets all [past farm] losses."

---

[1]There is no information in the record showing that Taxpayers reported farm losses on their personal income tax return in 2011. Despite inconsistencies in Taxpayers' brief in chief and the Department's cross brief in chief, the exhibits presented by the Department at the hearing show that only 2009, 2010, 2012, 2013, 2014, and 2015 were assessed—2011 was not included in the assessment.

**{5}** Taxpayer David Hoffman testified that Taxpayers' goal for the operation is to raise grass-fed cattle. He stated that Taxpayers each work approximately 45 hours a week on the operation. He also testified to his education in animal husbandry and his knowledge about cattle production. Both Taxpayers shared the opinion that their operation is a labor of love, and not a hobby. They reasoned that hobbies do not require the amount of hard work and money they contributed to the cattle operation.

**{6}** Auditor Milagros Bernardo provided testimony on behalf of the Department and explained the result of the audit was to disallow Taxpayers' farm losses as deductions due to consecutive years of increasing losses and because the operation did not qualify for the "presumption of profit motive" under 26 U.S.C. § 183(d) (presuming a business to be for-profit if the gross income of the business exceeds the deductions for three or more taxable years within a five year consecutive period). She also testified the assessment was proper based on her eleven years of experience as an auditor for the Department and based on the "profit motive interview" document outlining Taxpayers' responses to the nine factors under 26 C.F.R. § 1.183-2. In Ms. Bernardo's view, the Taxpayers' responses demonstrated that their grass-fed cattle operation was not a for-profit activity and stated that each determination of whether an activity is for-profit is made on a case-by-case basis after weighing the nine factors; the appreciation in the value of the Taxpayers' property and assets was only one factor considered in making the determination.

**{7}** The hearing officer issued a decision and order containing findings of fact, conclusions of law, and an analysis discussing whether Taxpayers' operation was for-profit and whether Taxpayers' penalty should be abated. She applied information from the testimony and exhibits to each of the nine factors under 26 C.F.R. § 1.183-2. The hearing officer determined that six of the nine factors weighed against, and three supported, finding Taxpayers' operation was for-profit, thereby rendering the Department's disallowance of the deduction, on balance, reasonable.

**{8}** Regarding the issues before her, the hearing officer first concluded that Taxpayers failed to overcome the presumption that the assessment of tax and interest by the Department was correct insofar as it was based on the Department's conclusion that Taxpayers' grass-fed beef operation was not engaged in a for-profit activity eligible for farm loss deductions. Second, the hearing officer found that under the totality of the circumstances, Taxpayers were not negligent because they relied on advice from an enrolled agent when they claimed the farm loss deductions and were therefore eligible for penalty abatement.

**{9}** Both Taxpayers and the Department filed timely notices of appeal pursuant to NMSA 1978, Section 7-1-25 (2015), each appealing the rulings within the hearing officer's decision adverse to them. In arguing that the hearing officer failed to consider all of the evidence regarding the operation's for-profit status, Taxpayers point primarily to the appreciation in the value of livestock and the appreciation in the value of the land due to the operation-specific changes made by Taxpayers. The Department makes three arguments on appeal: (1) the hearing officer erred when she abated the penalty

assessed against the Taxpayers because there is insufficient evidence in the record to show Taxpayers relied upon the advice of Mr. Mote in making their decision to take the deductions at issue; (2) an enrolled agent is not "competent tax counsel or [an] accountant" and therefore cannot be relied upon for penalty abatement under 3.1.11.11 NMAC; and (3) the hearing officer failed to make specific findings of fact supporting the abatement.

**STANDARD OF REVIEW**

**{10}**  Upon appeal under the Tax Administration Act, this Court may set aside a decision and order of a hearing officer only if it is found to be: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." Section 7-1-25(C). "An action is arbitrary and capricious if it is unreasonable, irrational, wi[l]lful, and does not result from a sifting process." *Regents of the Univ. of Ca. v. N.M. Water Quality Control Comm'n*, 2004-NMCA-073, ¶ 35, 136 N.M. 45, 94 P.3d 788 (internal quotation marks and citation omitted); *see id.* (affirming commission's provision of "adequate" statement of reasons for adopting water standards).

**{11}**  When reviewing a hearing officer's decision, this Court considers the burden on the taxpayer to overcome the presumption of correctness of an assessment by the Department. *Holt v. N.M. Dep't of Taxation & Revenue*, 2002-NMSC-034, ¶ 4, 133 N.M. 11. "While we employ the whole record standard of review, the evidence is viewed in the light most favorable to the decision of the hearing officer." *Brim Healthcare, Inc. v. Taxation & Revenue Dep't*, 1995-NMCA-055, ¶ 3, 119 N.M. 818, 896 P.2d 498. If there is more than one inference that can be drawn from the evidence, "then the inference drawn by the hearing officer is conclusive." *Kewanee Indus., Inc. v. Reese*, 1993-NMSC-006, ¶ 6, 114 N.M. 784, 845 P.2d 1238; *Waldroop v. O'Cheskey*, 1973-NMCA-146, ¶ 9, 85 N.M. 736, 516 P.2d 1119; *Rust Tractor Co. v. Bureau of Revenue*, 1970-NMCA-107, ¶ 5, 82 N.M. 82, 475 P.2d 779. "We do not reweigh the evidence" on which the hearing officer's inference is based. *Kewanee Indus. Inc.*, 1993-NMSC-006, ¶ 6.

**DISCUSSION**

**{12}**  We begin by noting that we have carefully reviewed the record proper in its entirety, along with the findings of fact and conclusions of law set forth in the hearing officer's written decision and order. Based on our review of the record and as we briefly explain below, we affirm the hearing officer's decision and order entered on April 10, 2017, for substantially the same reasons set forth therein. *See* Rule 12-405(B) NMRA (providing that appellate courts may dispose of a case by non-precedential order, decision or memorandum opinion under certain circumstances).

**The Hearing Officer's Determination That Taxpayers' Grass-Fed Cattle Operation is Not For-Profit is Supported by Substantial Evidence and in Accordance With Law**

**{13}** We first address the reasoning employed by the hearing officer in her determination that Taxpayers failed to overcome the correctness presumption of the assessment of tax and interest. As the hearing officer's analysis shows, six of the nine factors from 26 C.F.R. § 1.183-2 weigh against Taxpayers and support the hearing officer's determination that the operation is not for-profit. We reiterate that even if more than one inference can reasonably be drawn from the facts presented at the hearing, the hearing officer's findings are conclusive. *See Kewanee Indus. Inc.*, 1993-NMSC-006, ¶ 6.

**{14}** On the record before us, we cannot conclude the hearing officer's decision is arbitrary or capricious because there are clear, rational connections "between the facts found and the choices made" by the hearing officer regarding the issue of whether the business is for-profit. *See Regents of the Univ. of Cal.*, 2004-NMCA-073, ¶ 35 (internal quotation marks and citation omitted). In this regard, Taxpayers have not shown that the hearing officer acted fraudulently, arbitrarily or capriciously, that the hearing officer's decision is unsupported by substantial evidence, or that the hearing officer did not act in accordance with the law.

**{15}** To begin, the hearing officer properly weighed 26 C.F.R. § 1.183-2's nine factors according to the evidence presented at the hearing. First, Taxpayers' lack of business plan or formal budget, lack of experience in engaging in a similar business, failure to mitigate losses other than selling cattle one year due to drought, lack of profits on the grass-fed beef operation, reliance on other full time jobs for income, and characterization of raising cattle as fulfillment of a lifelong dream all indicate, as the hearing officer observed, that Taxpayers are operating their farm not for-profit, but for other purposes. Second, evidence supported the hearing officer's determination that even though Taxpayer David Hoffman researched and studied animal husbandry and cattle breeding operations, expended a substantial amount of time and effort on the operation, and relied on the possibility that grass-fed beef may be profitable in the future, this information and the factors to which it applies does not outweigh the other factors and the contrary evidence that underpins each. We conclude there to be clear, rational connections between the hearing officer's finding that Taxpayers' business was not operated for profit and her analysis of each of the nine factors. Accordingly, we affirm the hearing officer's conclusion of law that Taxpayers' business was not a for-profit activity, and the attendant denial of Taxpayers' deductions and affirmance of the Department's assessments.

**Taxpayers' Penalty Was Properly Abated Because Taxpayers Relied on an Enrolled Agent and Were Not Negligent**

**{16}** Second, we address the hearing officer's finding that the penalty assessed is abated because Taxpayers consulted with Mr. Mote, an enrolled agent under 31 C.F.R. § 10.4(a), on their tax liability and relied upon his advice when he prepared their tax returns. Under the Tax Administration Act, a penalty shall be assessed when a taxpayer fails to pay the required amount of tax due, if the failure is "due to negligence or disregard of department rules and regulations, but without intent to evade or defeat

tax[.]" NMSA 1978, § 7-1-69(A) (2007). Negligence is defined by the New Mexico Administrative Code as the "failure to exercise that degree of ordinary business care and prudence which reasonable taxpayers would exercise under like circumstances" or "inaction by taxpayers where action is required" or acting with "carelessness, erroneous belief or inattention." 3.1.11.10 NMAC.

**{17}**     The Department's regulations describe circumstances which "may indicate that a taxpayer has not been negligent or in disregard of rules and regulations." 3.1.11.11 NMAC. One such situation is when "the taxpayer proves that the failure to pay tax or to file a return was caused by reasonable reliance on the advice of competent tax counsel or accountant as to the taxpayer's liability after full disclosure of all relevant facts[.]" 3.1.11.11(D) NMAC. Under Section 7-1-69(B), "[n]o penalty shall be assessed against a taxpayer if the failure to pay an amount of tax when due results from a mistake of law made in good faith and on reasonable grounds."

**{18}**     Based upon the totality of the circumstances, we agree with the hearing officer in her finding that Taxpayers were not negligent. In arguing that reliance upon an enrolled agent is insufficient to qualify Taxpayers for penalty abatement, the Department argues the fact that "enrolled agent" is not included in the language of 3.1.11.11(D) NMAC and that an enrolled agent's role is limited to representing Taxpayers at hearings. However, the non-exclusive language of 3.1.11.11 NMAC ("[t]he following situations *may* indicate that a taxpayer has not been negligent" (emphasis added)) and the broad language of Section 7-1-69(B) (no penalty will be assessed if failure to pay tax "results from a mistake of law *made in good faith and on reasonable grounds*" (emphasis added)), does not exclude reliance upon the advice of an enrolled agent as a proper reason for penalty abatement. Furthermore, other courts have concluded otherwise. *See Mortensen v. Comm'r*, 440 F.3d 375, 388 (6th Cir. 2006) ("Much like a taxpayer's reliance on an attorney or an accountant, reliance on an enrolled agent is a factor we must consider in determining the reasonableness of a taxpayer's actions[.]"). Similarly, in both *Estate of Robinson v. Comm'r*, 100 T.C.M. (CCH) 82 (T.C. 2010) and *Gentile v. Comm'r*, 100 T.C.M. (CCH) 451 (T.C. 2010) the taxpayers relied upon the advice of an enrolled agent, and each was found to be a professional upon whom reliance may be placed in good faith, and which justifies the non-imposition of accuracy-related penalties on resulting underpayments of taxes. Here, the record reflects that Taxpayers reasonably relied upon the advice of Mr. Mote in claiming the deductions. As well, Mr. Mote is an enrolled agent with the Internal Revenue Service under 31 C.F.R. § 10.4(a) and is therefore, we conclude, a tax professional that counseled Taxpayers regarding their tax liability during the tax years at issue.

**{19}**     Regarding the Department's argument that substantial evidence did not support the hearing officer's conclusion that Taxpayers reasonably relied on the advice of Mr. Mote in deciding to take the deductions, Mr. Mote demonstrated his familiarity with the details of Taxpayers' grass-fed cattle operation through his testimony at the hearing. He was knowledgeable about the condition of the land when Taxpayers first purchased it, the number of cattle on Taxpayers' property, why Taxpayers changed their operation to grass-fed beef, the genetic differences of grass-fed cattle versus grain-fed cattle, and

the details of Taxpayers' plan to raise cattle for organic beef and how it will take time for Taxpayers to accomplish their goals. Mr. Mote's extensive knowledge of Taxpayers' operation shows he was made aware of the relevant facts regarding the operation in conjunction with his service to Taxpayers as an enrolled agent. We have no trouble concluding, as did the hearing officer, that such expertise, combined with the informed nature of Mr. Mote's advice to Taxpayers, qualifies as competent tax counsel on which Taxpayers reasonably, and not negligently, relied.

{20}    Thus, we conclude it is apparent that Mr. Mote was made aware of the facts about Taxpayers' operation and that Taxpayers relied upon Mr. Mote's advice in claiming the farm losses as deductions on their personal income tax return. As a result, substantial evidence supported the hearing officer's findings and conclusion that Taxpayers were not negligent under Section 7-1-69 and its decision to abate the penalty.

**CONCLUSION**

{21}    For the foregoing reasons, we affirm the hearing officer's decision and order of April 10, 2017.

**{22}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**